JOHN McCLAIN, Respondent, v. THE BROOKLYN CITY RAILROAD COMPANY, Appellant.

Plaintiff in attempting to cross F. street, in the city of B., which at the time was very much obstructed by cars on defendant's track, closely following each other, was run against by one of the horses attached to a car, thrown down and injured. In an action to recover damages plaintiff's evidence was to the effect that, after waiting several minutes for an opportunity to cross, he stepped behind and close to a car on its way out of a switch running into F. street and followed it until it reached the latter street and partially halted when he started to go across the street. Plaintiff testified that, as the car slacked up, he looked both ways on the F. street track; that he saw a car which had come almost to a stand-still twelve or fifteen feet distant, and he then started to go across and had nearly reached the outside rail when he was struck and injured; that he did not see the car or horses which struck him or know where they came from; that car, it appeared, came out of a switch on to the track between plaintiff and the car which he saw; the driver saw plaintiff, but made no effort to check his team or turn them to avoid a collision;

on the contrary, he struck the horses and greatly accelerated their speed, the one which collided with plaintiff being on a run. *Held*, that the question of defendant's negligence and of contributory negligence on the part of plaintiff were properly submitted to the jury.

The trial court charged that the defendant had no right to so occupy the street with its cars as to make it extremely dangerous to cross the street at all times. *Held*, no error.

The court also charged that " a mere error of judgment does not necessarily amount to carelessness. If the plaintiff took reasonable care and then made a mistake as to the safest course to pursue in crossing the street " he was not guilty of contributory negligence for that reason. *Held*, no error.

The court also stated in the charge that the place was a public street and plaintiff had a right to go where he chose; that no matter how many cars were in the street he had a right to select any point to go across, but he was bound to exercise care. *Held*, no error.

Opinions of medical experts that an injury received was the cause of the condition of the person injured, and that certain consequences in relation to his physical health and condition would follow as the result of the injury as indicated by such condition are competent evidence.

(Argued October 16, 1889; decided November 26, 1889.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made at the December Term, 1886, which affirmed a judgment in favor of the plaintiff, entered upon a verdict, and affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Samuel D. Morris* for appellant. It was the duty of the plaintiff to look in every direction from which danger might be apprehended; having failed to do so he is not entitled to recover. (*Woodard* v. *R. R. Co.*, 106 N. Y. 369; *Young* v. *R. R. Co.*, 107 id. 500; *Weber* v. *N. Y. C. & H. R. R. R. Co.*, 58 id. 455; *Harty* v. *N. J. C. R. R. Co.*, 42 id. 468; *Wilds* v. *H. R. R. Co.*, 24 id. 430; *Becht* v. *Corbin*, 92 id. 658; *Davenport* v. *B. C. R. R. Co.*, 100 id. 632; *Barker* v. *Savage*, 45 id. 191; *Squire* v. *C. P. R. Co.*, 4 J. & S. 436; *Hartnett* v. *B. S. & F. R. Co.*, 17 id. 185; *Belton* v. *Baxter*, 54 N. Y. 245; *Halpin* v. *Third Av. R. Co.*, 8 J. & S. 175; *Spencer* v. *U. R. R. Co.*, 5 Barb. 338; *Baxter* v. *Troy*, 41 N. Y. 505.) The plaintiff failed to show negligence on the part of defend-

ant, and for that reason a nonsuit should have been granted. (*Mahoney* v. *B. C. R. R. Co.*, 18 Week. Dig. 152; *Harty* v. *N. J. C. R. R. Co.*, 42 N. Y. 472; *Schwier* v. *N. Y. C. & H. R. R. R. Co.*, 15 Hun, 572; *Bulger* v. *A. R. Co.*, 42 N. Y. 457.) The medical testimony was speculative in the highest degree, and for that reason it should have been excluded. (*Strohm* v. *N. Y., L. E. & W. R. R. Co.*, 96 N. Y. 305; *Filer* v. *N. Y. C. & H. R. R. R. Co.*, 49 id. 45; *Lincoln* v. *S. R. R. Co.*, 23 Wend. 425, 435; *Curtis* v. *R. & S. R. R. Co.*, 18 N. Y. 541.) The measure of plaintiff's duty was to look to see if it was safe to cross, and if he failed to do that very thing, he was very negligent, and that failure of itself constituted the want of ordinary care under the decisions. (*Spencer* v. *U. R. R. Co.*, 5 Barb. 338; *Barker* v. *Savage*, 45 N. Y. 191; *Hartnett* v. *B. S., etc., R. R. Co.*, 17 J. & S. 185; *Belton* v. *Baxter*, 54 N. Y. 245; *Halpin* v. *T. A. R. R. Co.*, 8 J. & S. 175.) Defendant was entitled, as a matter of right, to have the proposition charged without the modification. (*Wilds* v. *H. R. R. Co.*, 24 N. Y. 446; *Chapman* v. *McCormick*, 86 id. 479; *Owen* v. *H. R. R. Co.*, 35 id. 516; *Weber* v. *N. Y. C. R. R. Co.*, 58 id. 455.`

*Charles J. Patterson* for respondent. The degree of care which the plaintiff was called upon to exercise in crossing this street was not so great as that required from one about to cross the track of a steam railroad. (*Lynam* v. *U. R. R. Co.*, 114 Mass. 83, 88; *Adolph* v. *C. P. N. & E. R. Co.*, 76 N. Y. 530, 535; *Moebus* v. *Herman*, 108 id. 340; *Greany* v. *L. I. R. R. Co.*, 101 id. 427–429; *Smedis* v. *R. R. R. Co.*, 88 id. 13; *Newson* v. *N. Y. C. R. R. Co.*, 29 id. 383.) The plaintiff could not be held negligent for failing to look back towards this second up switch, after he had left the sidewalk and was making his way across the street. (*Sheehan* v. *Edgar*, 58 N. Y. 631; *Belton* v. *Baxter*, 58 id. 411; *Davis* v *R. R. Co.*, 47 id. 400; *Stackus* v. *N. Y. C. R. R. Co.*, 79 id. 464; *Greany* v. *L. I. R. R. Co.*, 101 id. 425, 427; *Shaw* v. *Jewett*, 86 id. 616; *Kellogg* v. *N. Y. C. & H. R. R. R. Co.*, 79 id. 72.)

Plaintiff was not required to anticipate the increase in speed, which was reckless and in violation of the duty and care which defendant owed to him. (*Belton* v. *Baxter*, 58 N. Y. 411; *Mentz* v. *S. A. R. R. Co.*, 3 Abb. Ct. App. Dec. 274.) In suddenly running at excessive and increasing speed, in failing to observe the plaintiff, who was in plain view on the street, and in omitting to check the speed of the horses or turn them aside, the driver was guilty of negligence. (*Birkett* v. *K. I. Co.*, 110 N. Y. 504; 41 Hun, 404; *Moebus* v. *Herman*, 108 N. Y. 349; *Murphy* v. *Orr*, 96 id. 14; *Etherington* v. *P. P. & C. I. R. R. Co.*, 88 id. 641; *Bahrenburgh* v. *B. C. T. R. Co.*, 56 id. 6.2; *Fallon* v. *C. P. R. R. Co.*, 64 id. 13, 18; *Thurber* v. *H. R. R. Co.*, 60 id. 330; *Phelps* v. *Wait*, 30 id. 78; *Mangam* v. *B. C. R. R. Co.*, 38 id. 456.) Complaints of pain or other symptoms made by a patient to a physician are admissible in the patient's favor in a case of this character. (*Matteson* v. *N. Y. C. R. R. Co.*, 35 N. Y. 487, 491.) The opinion of an attending physician is admissible respecting the malady from which his patient suffers. (*Barber* v. *Merriam*, 11 Allen, 322; *Reed* v. *N. Y. C. R. R. Co.*, 45 N. Y. 574; *Roche* v. *B. C. & N. R. R. Co.*, 105 id. 294; *Murphy* v. *N. Y. C. R. R. Co.*, 66 Barb. 125; *Cleveland* v. *N. J. S. B. Co.*, 5 Hun, 523; *Fay* v. *Harlan*, 128 Mass. 244; *Kent* v. *Lincoln*, 32 Vt. 591; *Earl* v. *Tupper*, 45 id. 275; *Collins* v. *Waters*, 54 Ill. 485; *Towle* v. *Blake*, 48 N. H. 92; *State* v. *Gedicke*, 43 N. J. L. 86; *Bridge* v. *Oshkosh*, 67 Wis. 195; *Quaife* v. *C. N. & W. R. Co.*, 48 id. 513; *Rogers* v. *Cram*, 30 Tex. 195.) The opinions of the physicians who examined the plaintiff, that the tremor was due to injury to the nervous system, and as to the manner in which that injury operated to produce the tremor, were admissible. (*Matteson* v. *N. Y. C. R. R. Co.*, 35 N. Y. 492; *Turner* v. *Newburgh*, 109 id. 309.) The opinions of the physicians in respect to the future progress of the injury were admissible. (*Buel* v. *N. Y. C. R. R. Co.*, 31 N. Y. 314, 320; *Filer* v. *N. Y. C. R. R. Co.*, 49 id. 42; *Ward* v. *Kilpatrick*, 85 id. 413; *Fountain* v. *Pettee*, 38 id. 184; *Strohm* v. *N. Y., L. E. & W. R. R. Co.*,

96 id. 305; *Griswold* v. *N. Y. C. & H. R. R. R. Co.*, 115 id. 61.) The court may allow a hypothetical question even if its assumptions be not supported by evidence. (*Harnet* v. *Garvey*, 66 N. Y. 641.) A general objection to such a question is useless. (*Hall* v. *Crouse*, 13 Hun, 557; *Matteson* v. *N. Y. C. R. R. Co.*, 35 N. Y. 402; *Fort* v. *Brown*, 46 Barb. 366; *Vosburg* v. *R. R. Co.*, 14 Week. Dig. 54; 1 Greenl. on Ev. § 440; *Turner* v. *Newburgh*, 109 N. Y. 309; *Parsons* v. *N. Y. C. & H. R. R. R. Co.*, 113 id. 335; *Platner* v. *Platner*, 78 id. 90, 102; *Marks* v. *King*, 64 id. 628.) The sixth request was improper because it makes the test not that of reasonable care in the plaintiff, but whether the plaintiff could, by any possibility by looking, have seen the car in time to have avoided the accident. (*Shaw* v. *Jewett*, 86 N. Y. 616.) A person crossing a street may properly do so at any point and need not confine himself to the regular cross-walk. (*Moebus* v. *Herman*, 101 N. Y. 349; *Bruno* v. *City of Buffalo*, 90 id. 679; *Raymond* v. *Lowell*, 6 Cush. 524, 530; *Cotteril* v. *Starkey*, 8 Car. & P. 691.)

Bradley, J. The action was brought to recover for personal injuries of the plaintiff, alleged to have been occasioned solely by the negligence of the defendant. On January 24, 1885, when the plaintiff, with a small boy in his arms, was proceeding to cross Fulton street, in the city of Brooklyn, on foot, he was overtaken and knocked down by a team of horses drawing one of the defendant's street cars. This occurred between five and six o'clock in the afternoon, when the cars there were closely following each other, and thus materially interrupting passage across the street. The plaintiff, after waiting several minutes on the east side of Fulton street for an opportunity to cross over it, stepped behind and close to a car on its way out of what was known as the bridge depot switch into and southerly up Fulton street, and followed it closely until the car reached the latter street and partially halted, and then the plaintiff started to go across to the west side of the street. He nearly reached the outer rail of the

up-track when he was run against by the off-side horse of the team of a car which came out of the switch on another track into Fulton street, a short distance back, northerly of the place where the car, which the plaintiff followed, entered it, and was proceeding in the same direction.

While the defendant had the right to run its cars upon the street, its duty was to use reasonable care so as to do no unnecessary injury to persons traveling upon it. Whether the defendant was, on this occasion, chargeable with negligence, was a question of fact properly submitted to the jury. There was evidence tending to prove that the defendant's driver of the horses attached to the approaching car, saw the plaintiff on the track in advance of the team, and had the opportunity to observe the danger in which the rapid progress of the horses might place him, and yet made no effort to slack their movement or deviate their course so as to avoid the collision, although the plaintiff was at or near the outer rail at the time it occurred; but that, on the contrary, the speed of the horses was accelerated very considerably as they approached him.

The circumstances, as represented by the evidence on the part of the plaintiff, warranted the conclusion that by the exercise of the reasonable care, which it was the duty of the defendant's driver to observe, the injury would have been avoided.

But this fault, on the part of the defendant, did not charge it with liability, unless the plaintiff was free from negligence contributing to the calamity. This was a close, and the more difficult question upon the evidence. The plaintiff was somewhat familiar with the situation in that locality, and knew something of the extent of street car service there. He was, therefore, able to appreciate the necessity of careful observation in going upon the street to keep out of the way of moving cars, and to see that his course was clear. For that purpose it was incumbent on him to use due care. His precautionary duty in that respect, for his protection, may not have been so great as that imposed upon one crossing a steam car railroad, because a train on the latter is not subject to control as is, to

some extent, the team drawing a street car. But, as a street car must continue on the rails of its track, persons otherwise traveling on the street are required to use care to keep out of its way, yet for their protection the duty rests upon the driver to keep his horses reasonably within his control upon the public streets. (*Adolph* v. *C. P. N. & E. R. R. R. Co.*, 76 N. Y. 530; *Moebus* v. *Herrmann*, 108 id. 349.) If by the exercise of reasonable care the plaintiff could have seen the approaching car, and ought to have apprehended the danger of the situation, he was chargeable with negligence, for he was not at liberty to take even doubtful chances of the consequences of crossing the track in the face of danger or in reliance upon the successful attempt of the driver to slack the speed of the horses. (*Barker* v. *Savage*, 45 N. Y. 191; *Belton* v. *Baxter*, 54 id. 245; *Davenport* v. *Brooklyn City R. R. Co.*, 100 id. 632.)

The contention on the part of the defense that if he had looked in the direction from which it was coming, the plaintiff would have seen the approaching car, had the support of evidence, and upon that fact is based the charge that he was negligent. The plaintiff says that when the car which he followed slacked up, he looked both ways on the Fulton street track and saw a car drawn by three horses, headed southerly upon the track which he attempted to cross; that it had come almost to a stand-still twelve or fifteen feet from where he was; that he then started to go across the track and was knocked down as before stated.

It seems that the car drawn by the horses, which came in collision with him, came out of the bridge depot switch on a curve from the north-east, and entered upon the Fulton street track in front of the three-horse car before mentioned, so as to drop in behind the car the plaintiff had been following. He also testified that he did not see the car or horses by which he was struck down, and did not know where it came from.

If, when he had started from behind the car to cross, he had looked back upon the switch track by which the approaching

car entered that on Fulton street, the plaintiff may have seen the car coming. But seeing the car halting but a short distance from him, he may have been led to suppose that there was no danger from any other source in that direction, and, therefore, he failed to observe the car coming on the intermediate entering switch, the junction of which with the main track evidently was near the place from which he then started to cross the track.

That situation, in view of the expeditious movement required of him to get across the track, furnished some excuse to the plaintiff for not making a more searching observation than he says he did make before starting to cross over to the west side of the street. The distance, at that time, of the horses of that car from him must have been short, as he was struck before he was able to completely cross the track on which they came up behind and to him. But the fact that the horses were struck, as the evidence tends to prove they were, by the defendant's trackman, and by the driver when they were proceeding on the curve into the main track, and thus put into rapid movement, lessened the time of their approach to the plaintiff and for his opportunity to escape by crossing in advance of them.

The situation, as represented by one of the plaintiff's witnesses, was, that when the plaintiff "got to the track nearest the sidewalk, the car that struck him came out of the second switch on the up track." "The right-hand horse was on a run — he went faster after the man hit him" with the iron. The witness thought the driver struck the horse; and added that the horse which came against plaintiff was on a run. It may have been inferred, from the evidence, that but for the increased movement given to the horses, the plaintiff would have escaped the injury. The conclusion was, therefore, permitted that when the plaintiff started to cross the track the horses were on the switch, and not within his observation when and as he looked down the main track, which he proceeded to cross; and that it was by the accelerated speed that they were enabled to get upon that track and overtake him

before he passed the outer rail.   It may also be observed that the
continued succession in the movement of cars upon the track,
and other vehicles upon the street, may have been such that it
did not seem to him prudent on his way across to stop and
deliberately look in all directions, or to turn around to see
whether anything was approaching in the rear.   It cannot, as
matter of law, be held that he was less alert under the circum-
stances than he was required to be.   There was some conflict
of evidence on the subject, but in view of that the most
favorable to him, it was such as to present a question of fact
and warrant the finding that the plaintiff was not chargeable
with negligence contributing to the injury.   Whether or not,
with less interruption and greater safety, the plaintiff could
have crossed the street at some other point, or in some other
way have gone to his place of destination, so far as it had any
bearing upon the question of his negligence, was disposed of
by the verdict of the jury.   He was required, for safety, to
act upon his judgment and to use due care to escape danger.
And to support, upon this review, the ruling of the trial court
upon the motion for nonsuit, it is sufficient that the evidence
warranted the submission of the case to the jury, which it
clearly did.

   The defendant's counsel took exception to the reception of
opinions of medical witnesses.   The physicians attended the
plaintiff, and their evidence was founded upon personal exam-
ination and observation of his condition which they described.

   It is argued that the evidence was speculative in character,
and, to support the objection that it was incompetent, the case
of *Strohm* v. *New York, Lake Erie & Western Railroad
Company* (96 N. Y. 305) is cited as authority, where it was
held that opinions of what might follow or develop from per-
sonal injuries, are merely speculative as to the consequences,
and lack the requisite element of reasonable certainty to render
them admissible as evidence.

   The statement of the possibility of future consequences of
an injury, as there properly held, does not necessarily furnish
any evidence of what will follow.   It is mere speculation as

to what may be the future condition of the patient, resulting from an injury, and does not represent the judgment of the expert as to what will be its effect. That case is not in conflict with the earlier ones holding that evidence of the probable results of an injury was competent. (*Lincoln* v. *Saratoga, etc., R. R. Co.,* 23 Wend. 425; *Filer* v. *N. Y. C. R. R. Co.,* 49 N. Y. 42.) The evidence of that character is dependent upon the opinions of medical experts. It may not be, and ordinarily is not, susceptible of absolute certainty. And their judgment of the probable consequences comes within the rule of reasonable certainty, and, therefore, of admissibility. (*Turner* v. *City of Newburgh,* 109 N. Y. 301, 309; *Griswold* v. *N. Y. C. & H. R. R. R. Co.,* 44 Hun, 236; affirmed, 115 N. Y. 61.)

There was no error in the reception of the evidence referred to in the present case. It was given as the judgment of the witnesses that the injury was the cause of the condition of the plaintiff, and that certain consequences would follow in relation to his physical health and condition, as the result of the injury, as indicated by such condition. And the same may be said of the exception taken to reception of the answer of the doctor to the hypothetical question. Upon the state of facts assumed by the inquiry, it was competent for the witness to state that in his judgment the tremor and the impairment of the nervous system, with which the plaintiff was afflicted, were due to the injury. The facts upon which the question was based practically excluded all causes up to the time of the accident, and, therefore, the evidence called for was not speculative. It was offered to show not merely that the injury might produce the condition or that such a result was likely to follow, but that in view of such facts it did cause such condition.

The further questions arise upon exceptions taken to the charge and to the refusals to charge as requested. The charge made upon the plaintiff's request, that "the defendant had no right to so occupy the street and use the same with their cars, as to make it extremely dangerous to cross the street at all

times," had relation to the manner of performing the car service on the street, and, as fairly construed, did not mean that the defendant had no right to run so many cars as it did there. While interruptions in crossing it may be necessarily incident to its use in running cars, there is no such exclusive right for that purpose as to render the use of it for the purposes of travel across it so dangerous as to practically preclude such use. This was the fair import of the charge, and the exception to it was not well taken.

The court also charged that " a mere error of judgment does not necessarily amount to carelessness. If the plaintiff took reasonable care and then made a mistake as to the safest course to pursue in crossing the street, he is not guilty of contributory negligence for that reason," an exception was taken.

While acting on error in judgment under some circumstances may constitute negligence, such is not the necessary consequence of it under all circumstances. And as applied to this case the charge as made was not error, although the question, so far as related to the conduct of the plaintiff, was mainly one involving that of reasonable care on his part.

In the course of the charge to the jury the court said : " It was a public street and he (plaintiff) had a right to go where he chose, he was to be the judge of that himself ; " to which exception was taken. And the court further charged : " No matter how many cars were in the street, or where the point was, this old gentleman (plaintiff) had a right to select any point to go across, but he was bound to exercise care commensurable with the circumstances of the case." And exception was taken to the statement that the plaintiff had a right to select any point to go across. It cannot be assumed that the court intended to have the jury understand that the plaintiff was at liberty, without prejudice, to encounter apparent danger, or that his right upon the street was superior to that of the defendant in the operation of its cars, but that his right to cross the street was no less at one than at another point, and that it was for him to determine where he would seek to exercise the right to do so. The responsibility, as the

court charged, to exercise due care rested upon him. That care is as essential in the outset of the attempt of a person to cross as in the act of crossing, but the exercise of such right must be dependent upon his judgment, and the care essential to the proper exercise of it involves also the consideration of the rights of others, whose duties in that respect on the street are relatively the same. (*Moebus* v. *Herrmann*, 108 N. Y. 349.) There was no error in this charge. The further exceptions to the charge and to the refusal to charge as requested, involve only the consideration of the questions of the plaintiff's negligence founded upon his failure to look and see the approaching car horses by which he was injured. This subject has already had some attention. It was his duty to look in all the directions from which he had any reason to apprehend danger, or liability to exposure to hazard of injury. He evidently did not apprehend the approach of the horses behind him. It does not appear that his attention had been called to the switch on which they came. He says he did not know how those tracks were situated, that he never took notice of them. The situation which may have given to him the appearance of safety has been before referred to. It cannot, under the circumstances, as matter of law, be said that he was bound to look down upon the switch from which the car came on to the main track that he was proceeding to cross, although whether he did all that was required of him in looking, whether in view of the situation he did all, in that respect, essential to reasonable care and due caution on his part, was a question of fact for the jury.

After an injury has occurred it is not unfrequent that it may be seen how it could have been avoided. But contributory negligence is not always chargeable upon the failure to exercise the greatest prudence or the best judgment in cases where a person is required to act suddenly or in emergency.

No other exception seems to require consideration.

The judgment should be affirmed.

All concur, except Brown, J., not sitting.

Judgment affirmed.